UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| In the Matter of: | : | Chapter 11 |
| | : | |
| TFI ENTERPRISES, INC. | : | |
| f/k/a Tom's Foods Inc., | : | |
| | : | |
| Debtor | : | Case No. 05-40683 RFH |
| | : | |
| EUGENE I. DAVIS, in his capacity | : | |
| as Responsible Officer for the | : | |
| Bankruptcy Estate of | : | |
| TFI ENTERPRISES, INC., f/k/a | : | |
| Tom's Foods, Inc., | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| vs. | : | |
| | : | |
| ZURICH AMERICAN INSURANCE | : | |
| COMPANY, | : | |
| | : | |
| Defendant | : | Adversary Proceeding |
| | : | No. 08-4005 |

BEFORE

ROBERT F. HERSHNER, JR.
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

Plaintiff:                          Frank W. DeBorde
                                       Lisa Wolgast
                                       1600 Atlanta Financial Center
                                       3343 Peachtree Road NE
                                       Atlanta, Georgia 30326

Defendant:                   Margaret M. Anderson
                                         111 South Wacker Drive
                                         Chicago, Illinois 60606

<u>MEMORANDUM OPINION</u>

Zurich American Insurance Company, Defendant, filed with the Court on February 13, 2008, its Motion of Zurich American Insurance Company To Dismiss Complaint For Lack Of Subject Matter Jurisdiction. Eugene I. Davis, in his capacity as Responsible Officer for the Bankruptcy Estate of TFI Enterprises, Inc., f/k/a Tom's Foods, Inc., Plaintiff, filed a response March 4, 2008. Defendant's motion came on for a hearing on March 25, 2008. The Court, having considered the motion, the response, and the arguments of counsel, now publishes this memorandum opinion.

Defendant is an insurance company that does business in the State of Georgia. Tom's Foods Inc., Debtor,[1] was a producer of snack foods whose headquarters was located in Columbus, Georgia. Defendant provided Debtor with workers' compensation, employers' liability, automobile liability, and general liability insurance.[2] Most policies had deductibles of $500,000 per accident.[3] If a third party made a valid claim, Debtor was responsible for the deductible and Defendant was responsible for the remainder of the claim up to the policy limits.

Defendant and Debtor entered into a Deductible Agreement dated June 30,

---

[1] Tom's Foods Inc. is now known as TFI Enterprises, Inc.

[2] The insurance policies have not been provided to the Court.

[3] See Specifications To Deductible Agreement[s], pp 1-2, Exhibits D, E, F, Docket Nos. 1-6, 1-7, 1-8. Counsel ask the Court to consider certain exhibits attached to Plaintiff's complaint and Defendant's motion to dismiss.

2003. The Deductible Agreement has two parts: (1) Terms and Conditions; and (2) Specifications. Under the Terms and Conditions part, Defendant was to pay the claims made under the insurance policies, including the deductibles which were Debtor's obligations. Defendant was to submit a bill to Debtor for the deductibles which Debtor was to then pay. Debtor was required to provide collateral to secure its obligations to reimburse Defendant for the deductibles. The collateral was to be a letter of credit issued by a bank. The Deductible Agreement has a binding arbitration clause which states that arbitration shall take place in Schaumburg, Illinois,[4] unless the parties agree otherwise. The Deductible Agreement states that it shall be governed by and interpreted in accordance with the laws of the State of New York.

The second part of the Deductible Agreement was called "Specifications." Debtor and Defendant entered into Specifications To Deductible Agreements dated June 30, 2003, September 4, 2004, and November 4, 2004. The Specifications state the deductibles for the insurance policies and the deductible premiums which were subject to audit and adjustment.[5] The Specifications do not have binding arbitration clauses.[6]

---

[4] Defendant's administrative offices are located is Schaumburg, Illinois.

[5] For example, the premium for workers' compensation insurance was to be adjusted in accordance with the actual number of workers employed by Debtor.

[6] The Specifications are part of the Deductible Agreement which has a binding arbitration clause.

As an alternative to providing a letter of credit under the Deductible Agreement, Debtor purchased Deductible Protection Policies from Defendant. Debtor was to pay "estimated premiums" which were subject to audit and adjustment. Under the Deductible Protection Policies, Defendant was to pay itself should Debtor fail to reimburse Defendant for any deductible payments made on Debtor's behalf under the Deductible Agreement. The Deductible Protection Policies do not have binding arbitration clauses.

Debtor had financial problems and filed a petition under Chapter 11 of the Bankruptcy Code on April 6, 2005. Debtor has liquidated substantially all of its assets and will not reorganize as a going concern. Eugene I. Davis, Plaintiff, is the Responsible Officer of Debtor's bankruptcy estate. Plaintiff is responsible for winding up Debtor's affairs. Plaintiff is authorized to investigate, prosecute, and settle Debtor's claims and causes of action against any and all parties.[7]

Plaintiff filed on January 17, 2008, its Complaint Of Chapter 11 Responsible Officer To Recover Property Of The Estate From Zurich American Insurance Company. Plaintiff contends in part that Defendant has refused to refund the excess "estimated premiums" which were subject to audit and adjustment.

Defendant filed on February 13, 2008, a motion to dismiss Plaintiff's complaint for lack of subject matter jurisdiction. Defendant contends that the dispute at issue is

---

[7] See Order, p.8 (filed Dec. 16, 2005), Docket No. 771.

subject to binding arbitration. At the hearing on March 25, 2008, Defendant's counsel suggested that the Court stay this adversary proceeding pending a ruling by the arbitration panel on the dispute at issue rather than dismissing the adversary proceeding.[8]

Plaintiff contends that the Deductible Agreement, the Specifications To Deductible Agreements, and the Deductible Protection Policies are contracts of insurance and are not subject to arbitration under Georgia law.

In <u>Whiting-Turner Contracting Co. v. Electric Machinery Enterprises, Inc.</u>, (<u>In re Electric Machinery Enterprises, Inc.</u>),[9] the Eleventh Circuit Court of Appeals stated:

> The Federal Arbitration Act ("FAA") provides, in pertinent part, that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA establishes a federal policy favoring arbitration. However, "[l]ike any statutory directive the Arbitration Act's mandate may be overridden by a contrary congressional command." "Thus, unless Congress has clearly expressed an intention to preclude arbitration of the statutory claim, a party is bound by its agreement to arbitrate." The party opposing arbitration has the burden of proving "that Congress intended to preclude a waiver of a judicial remedies for [the particular claim] at issue." (citations omitted)

479 F.3d at 795.

---

[8] 9 U.S.C.A. § 3 (West 1999) (court shall stay trial of a proceeding until arbitration concluded).

[9] 479 F.3d 791 (11th Cir. 2007).

5

In <u>McKnight v. Chicago Title Insurance Co.</u>[10] the Eleventh Circuit stated:

> Second is the exception to the [FAA] rule, found in the McCarran-Ferguson Act, which leaves the regulation of the insurance industry to the states. . . .15 U.S.C. 1012(b). In the right circumstances, the McCarran-Ferguson Act provides an exception to the general rule of arbitration under the Federal Arbitration Act. If the state has an anti-arbitration law enacted for the purpose of regulating the business of insurance, and if enforcing, pursuant to the Federal Arbitration Act, an arbitration clause would invalidate, impair, or supersede that state law, a court should refuse to enforce the arbitration clause.

358 F.3d at 857.

The circuit court also stated:

> [We conclude] that a provision in a state's arbitration code excepting insurance contracts is a law regulating the business of insurance.

358 F.3d at 858.

Finally, the circuit court stated:

> [W]e conclude that [Georgia Code] § 9-9-2(c)(3) is a law enacted to regulate the business of insurance, within the meaning of the McCarran-Ferguson Act. Thus, § 9-9-2(c)(3) is excepted from preemption by the Federal Arbitration Act.

358 F.3d at 859.

---

[10] 358 F.3d 854 (11th Cir. 2004).

6

Section § 9-9-2(c)(3) of the Georgia Arbitration Code[11] provides:

> 9-9-2. Applicability; exclusive method.
>
> . . .
>
> © This part shall apply to all disputes in which the parties thereto have agreed in writing to arbitrate and shall provide the exclusive means by which agreements to arbitrate disputes can be enforced, except the following, to which this part shall not apply:
>
> . . .
>
> > (3) Any contract of insurance, as defined in paragraph (1) of Code Section 33-1-2; provided, however, that nothing in this paragraph shall impair or prohibit the enforcement of or in any way invalidate an arbitration clause or provision in a contract between insurance companies; (emphasis added)

O.C.G.A. § 9-9-2(c)(3) (2007)

"This provision [§ 9-9-2(c)(3)] invalidates arbitration agreements in insurance contracts as defined in OCGA § 33-1-2, with the exception that it does not prohibit enforcement of arbitration agreements in contracts between insurance companies." Continental Insurance Co. v. Equity Residential Properties Trust, 255 Ga. App. 445, 565 S.E. 2d 603, 604 (2002) cert denied.

Simply stated, in Georgia a contract of insurance is not subject to arbitration unless the contract is between insurance companies.

Georgia Code § 33-1-2(2) defines "insurance" as follows:

---

[11] Chapter 9 of Title 9 of the Georgia Code is known as the Georgia Arbitration Code. See O.C.G.A. § 9-9-1 (2007).

7

> 33-1-2. Definitions.
>
>   As used in this title, the term:
>
>   . . .
>
>   (2) "Insurance" means a contract which is an integral part of a plan for distributing individual losses whereby one undertakes to indemnify another or to pay a specified amount or benefits upon determinable contingencies.

O.C.G.A. § 33-1-2(2) (Supp. 2007).

In <u>Golf Marketing, Inc. v. Atlanta Classic Cars, Inc.</u>,[12] the Georgia Court of Appeals stated:

> By brief, GMI argues, that the instant contract was not an "insurance" contract governed by the Georgia Insurance Code, OCGA § 33-1-1 et. seq. However, the instant contract sought to indemnify ACCI for loss occurring due to a specific, determinable contingency which may or may not occur, i.e. an ace on the 11th hole. The contract is referred to as a "policy"; the payment for the contract is referred to as a "premium"; the indemnification is referred to as "coverage"; and a request for payment under the policy is referred to as a "claim." Thus, despite GMI's assertions to the contrary, we find the contract at issue to be in the nature of an "insurance" contract per OCGA § 33-1-2 (2) and governed by the applicable Code section.

538 S.E. 2d at 810 n.2.

The Court will now consider whether the agreements entered into by Debtor

---

[12] 245 Ga. App. 720, 538 S.E. 2d 809 (2000).

8

and Defendant are subject to binding arbitration.  The Deductible Agreement, part P, states that it "shall be governed by and interpreted in accordance with the laws of the State of New York."  Even though the Deductible Agreement contains a choice of law provision, Georgia courts apply Georgia law to determine whether an arbitration clause is enforceable under § 9-9-2(c)(3).  Continental Insurance Co., 565 S.E. 2d at 604-05.  Neither Plaintiff nor Defendant cite any New York law on the issues presented.  The Court will apply Georgia law.  See Continental Technical Services, Inc. v. Rockwell International Corp., 927 F.2d 1198, 1199 (11th Cir. 1991) (federal courts do not have to scour the law of a foreign state for possible arguments a party might have made).

Deductible Agreement

The Deductible Agreement, part C, states: "We [Defendant] assume a financial risk that may require Collateral. . . ."  "We accept the risk transfer excess of the Deductible Amount(s) and the Aggregate Deductible, if applicable, up to the limits of liability under the Policy(ies).  You [Debtor] pays Us [Defendant] for Our [Defendant's] assumption of this obligation and for Our [Defendant's] expenses."  In part C, Defendant assumed a financial risk and Debtor agreed to pay Defendant for the assumption.  The Deductible Agreement, part D, provides: "The [Deductible] Program has two primary, independent components: (1) the insurance coverage provided under

9

the Policy(ies); and (2) the cash flow benefits achieved through the financing arrangement under the Program." The Deductible Agreement is "an integral part of a plan for distributing" financial risk in exchange for the payment of premiums. The Court is persuaded that the Deductible Agreement is an insurance contract under § 9-9-2(c)(3) and is not subject to binding arbitration.

Specifications To Deductible Agreement

The Specifications are part of the Deductible Agreement which has a binding arbitration clause. The Specifications do not have separate arbitration clauses. The Specifications state the deductibles for the insurance policies and the deductible premiums which were subject to audit and adjustment. The Specifications also state the aggregate deductible, the premium charge for Terrorism Risk Insurance, the premium surcharges, the unallocated loss adjustment expense, and the paid loss billings. The Specifications deal with the risks assumed by Debtor and Defendant, and with how much Debtor was to pay for the risks assumed by Defendant. The Court is persuaded that the Specifications are insurance contracts under § 9-9-2(c)(3) and are not subject to binding arbitration.

Deductible Protection Policies

The Deductible Protection Policies state:

> In return for the payment of premium and subject to all the terms of the policy, we agree with you to provide insurance as stated in this policy.[13]

The Deductible Protection Policies use the following terms: policy number, named insured, policy period, loss limit, limit of liability, estimated premiums, and deductible amounts. These are terms that are regularly used in insurance contracts.

The Deductible Protection Policies do not contain arbitration clauses. The Court is persuaded that the Deductible Protection Policies are insurance contracts under § 9-9-2(c)(3) and are not subject to binding arbitration.

The Court is persuaded that Defendant's motion to dismiss Plaintiff's complaint must be denied.

An order in accordance with this memorandum opinion will be entered this date.

DATED this 9th day of April 2008.

    /s/ Robert F. Hershner, Jr.
ROBERT F. HERSHNER, JR.
Bankruptcy Judge
United States Bankruptcy Court

---

[13] Deductible Protection Policies, pages titled Important Notice - In Witness Clause, Exhibits A, B, C, Docket Nos. 1-3, 1-4, 1-5.